FILED
CLERK

4/25/2013 4:20 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
NKL ENTERPRISES, LLC,

                   Appellant,

       -against-

OYSTER BAY MANAGEMENT CO., LLC,

                   Appellee.
----------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
12-CV-5091 (ADS)

**APPEARANCES:**

**The Morrison Law Offices, PC**
*Attorneys for the Appellant*
87 Walker Street
2nd Floor
New York, NY 10010
    By: Lawrence F. Morrison, Esq., Of Counsel

**Lewis W. Siegel, Esq.**
*Attorney for the Appellee*
355 Lexington Avenue
New York, NY 10017

**SPATT, District Judge**.

     Presently before the Court is the Appellant's appeal of an order entered by the United States Bankruptcy Court for the Eastern District of New York, dated August 28, 2012, which granted the motion of the Appellee seeking relief from the automatic stay, *nunc pro tunc*. For the reasons set forth below, the appeal is dismissed.

## I. BACKGROUND

     On July 25, 2012 (the "Petition Date"), the Appellant NKL Enterprises, LLC ("NKL") filed a voluntary petition for Chapter 11 bankruptcy. NKL's sole asset was its purported ownership of a certain piece of real property, located at 53-55 Main Street, Cold Spring Harbor,

1

New York (the "Cold Spring Harbor Property"). NKL had acquired this ownership from Clear Blue Water LLC ("Clear Blue") by a deed in lieu of foreclosure.

The bankruptcy petition was filed less than an hour before a scheduled foreclosure sale on the Cold Spring Harbor Property. Thus, according to the Appellee Oyster Bay Management Co., LLC ("OBM"), NKL's bankruptcy petition was filed solely to improperly delay the foreclosure sale of the Cold Spring Harbor Property. In support of this position, OBM explains that the day before the bankruptcy filing, July 24, 2012, NKL had appeared in New York Supreme Court, Suffolk County, seeking an Order to Show Cause to delay the foreclosure sale on the ground that its interests as the second mortgagee on the Cold Spring Harbor Property would be adversely affected if the foreclosure sale were permitted to be consummated. This application was denied. Furthermore, the Appellee contends that NKL appears to have been formed solely to work with Clear Blue to further delay the foreclosure of the Cold Spring Harbor Property.

As stated above, on July 25, 2012, NKL filed for bankruptcy. On behalf of NKL, Steven R. Hafner appeared at the foreclosure sale that occurred later that day. It is undisputed that he provided notice to OBM's representative of NKL's bankruptcy. According to the Appellant, Hafner also notified OBM of NKL's interest in the real property. However, according to the Appellee, the person who appeared at the foreclosure sale did not present any evidence that the Cold Spring Harbor Property was owned by NKL. Thus, the referee for the foreclosure went forward and conducted the auction. OBM made the sole bid—one million dollars—and was declared the winning bidder.

On July 31, 2012, the Appellee OBM filed a motion with the Bankruptcy Court seeking to vacate the automatic stay, *nunc pro tunc*, to the Petition Date. If granted, this would permit

2

OBM to complete the foreclosure sale of the Cold Spring Harbor Property without the minimum 45 day delay that would have been required if OBM were forced to renotice the foreclosure sale.

On August 14, 2012, the Bankruptcy Court held a hearing on OBM's motion. NKL's principals were unable to retain an attorney by this date, and therefore they appeared before the Bankruptcy Court *pro se*. At the August 14, 2012 hearing, United States Bankruptcy Judge Dorothy Eisenberg heard from both NKL's principals and OBM's counsel. Judge Eisenberg observed during the course of this proceeding that NKL had improperly filed the bankruptcy petition *pro se* by its principals without an attorney, and that the case could be dismissed on that ground alone. She also took note of the fact that NKL had failed to file any opposition to OBM's motion. The Bankruptcy Court then explored NKL's motivations for filing the bankruptcy petition, concluding that the case was likely filed in bad faith for reasons of delaying the scheduled foreclosure. She then granted OBM's motion and directed OBM to submit a proposed order to that effect.

On August 22, 2012, NKL filed an objection to the proposed order, again doing so *pro se*. Although it was untimely, the Bankruptcy Court scheduled a hearing on NKL's objection.

On August 28, 2012, a second hearing was held by the Bankruptcy Court. At that time, Lawrence F. Morrison, Esq. appeared on NKL's behalf as its counsel. Morrison argued before Judge Eisenberg that the relief from the stay should not have been granted on a *nunc pro tunc* basis. He pointed out that the Bankruptcy Court indicated at the first hearing that NKL would have an opportunity to bid on the foreclosure, but that this was actually inaccurate because the sale had occurred on the day of the bankruptcy filing. He explained that he did not have any further information with regard to NKL's alleged bad faith, as he had only been very recently retained. Finally, Morrison had no objection to the bankruptcy case being dismissed in its

3

entirety. Judge Eisenberg observed during the second hearing that NKL had failed to comply with many Chapter 11 requirements, such as filing schedules, and that this was a further indication that the case was brought in bad faith. She ultimately concluded that there was no evidence presented that would provide a basis to support any action other than to enter an order granting relief from the stay, *nunc pro tunc*. Therefore, the Bankruptcy Court overruled NKL's objection and signed the order providing that the automatic stay was vacated, *nunc pro tunc*, to the date and time the petition in the bankruptcy case was filed, so as to allow OBM to pursue its rights, under applicable non-bankruptcy law, with respect to the Cold Spring Property.

On September 11, 2012, the United States Trustee filed a motion to dismiss the Chapter 11 case, or convert the case to Chapter 7, on the grounds that NKL had failed to file schedules or a statement of financial affairs, or to obtain court approval of its retention of an attorney, or submit operating reports, or submit to an examination pursuant to Bankruptcy Code §341(a). On October 16, 2012, the Bankruptcy Court held a hearing on the Trustee's motion, which NKL did not oppose. Thereafter, on October 18, 2012, the United States Trustee submitted a proposed order dismissing the bankruptcy case with prejudice. NKL did not file an opposition or otherwise appear to oppose this dismissal. On November 9, 2012, the dismissal order was entered by the Bankruptcy Court, so that NKL's Chapter 11 case was dismissed with prejudice. NKL did not appeal from this order.

## II.  DISCUSSION

**A.  Legal Standard**

The Court is now faced with reviewing the Bankruptcy Court's decision to grant relief from the automatic stay *nunc pro tunc*. The Bankruptcy Court's actions in this context are

reviewed for abuse of discretion. See In re Aquatic Dev. Group, Inc., 352 F.3d 671, 678 (2d Cir. 2003) (stating with respect to the review of a bankruptcy's grant of *nunc pro tunc* relief, "we review a bankruptcy court's decision regarding such approval for abuse of discretion, which we have defined as (i) a decision resting on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (ii) a decision that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions.") (citations omitted); In re Adomah, 368 B.R. 134, 137 (Bankr. S.D.N.Y. 2007); see also In re Corto, No. 92 Civ. 365, 1992 WL 279257, at *2 (W.D.N.Y. Sept. 14, 1992) ("The decision to grant relief from an automatic stay is committed to the discretion of the bankruptcy judge and, therefore, is reviewed under the abuse of discretion standard.").

**B.  As to *Nunc Pro Tunc* Relief from an Automatic Stay**

Section 362(a)(1) of the Bankruptcy Code provides that the filing of a bankruptcy petition creates an automatic stay against "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . . ." 11 U.S.C. § 362(a)(1). The automatic stay provision is "one of the fundamental debtor protections provided by the bankruptcy laws," designed to relieve "the financial pressures that drove [debtors] into bankruptcy." H.R. Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97. "It affords debtors a 'breathing spell' from the collection process and enables them to attempt a repayment or reorganization plan to satisfy existing debt." Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc., 157 F.3d 169, 172 (2d Cir. 1998) (citing In re Siciliano, 13 F.3d 748, 750 (3d Cir. 1994)).

As the Second Circuit has noted, the automatic stay "is effective immediately upon the filing of the petition, and any proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect." Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 527 (2d Cir. 1994) (citing, *inter alia*, In re Fugazy Express, Inc., 982 F.2d 769, 776 (2d Cir. 1992)). However, a bankruptcy court has the power to take measures that grant relief from the automatic stay, including "terminating, annulling, modifying, or conditioning" the stay, under certain circumstances. 11 U.S.C. § 362(d).

For example, an order from a bankruptcy court may terminate an automatic stay, but "terminating" an automatic stay operates only from the date of entry of the order. See In re Albany Partners, Ltd., 749 F.2d 670, 675 (11th Cir. 1984) (citing 2 Collier's Bankruptcy Manual ¶ 362.06 (3d ed. 1983)). Alternatively, "bankruptcy courts have the plastic powers to modify or condition an automatic stay so as to fashion the appropriate scope of relief." Eastern Refractories, 157 F.3d at 172. Finally, and particularly relevant here, a bankruptcy court may enact an "annulment"—granting relief from the automatic stay *nunc pro tunc*, thereby retroactively lifting the stay to permit a certain otherwise forbidden course of action, such as a civil litigation or a foreclosure proceeding. See In re WorldCom, Inc., 325 B.R. 511, 519 (Bankr. S.D.N.Y. 2005) ("When an action has been commenced in violation of the stay, that action can only be made legitimate by an order retroactively validating the action."); see also In re Ebadi, 448 B.R. 308, 317 (Bankr. E.D.N.Y. 2011) ("in appropriate circumstances stay violations can be cured *nunc pro tunc*"). "Although granting retroactive relief from the stay undisputedly falls within the powers of a bankruptcy court, courts should use this power sparingly, and only under compelling circumstances." In re Ebadi, 448 B.R. at 319.

6

**C.  As to Mootness**

In response to NKL's arguments, OBM contends that the appeal is in fact moot because the Chapter 11 case was dismissed.  Specifically, on November 9, 2012, the Bankruptcy Court entered a dismissal order, finding that the actions of NKL "appear[ed] to be an abuse of the Bankruptcy Code and its provisions", and ruling that the case was dismissed with prejudice.  This order was entered in response to the Trustee's motion to dismiss the case or convert it to a case under Chapter 7.  NKL did not respond to, or object to, this motion.  Further, NKT did not appear at the hearing on this motion to dismiss nor did it respond or object to the proposed order by the Trustee to dismiss the case.  Finally, the dismissal order entered by the Bankruptcy Court on November 9, 2012 was not appealed by NKT within the required 14 day time frame.

The Appellee argues that because the underlying bankruptcy proceeding has been dismissed with prejudice and has not been appealed, that even if this Court were to reverse the Bankruptcy Court's *nunc pro tunc* order, the automatic stay—which otherwise ends with the dismissal of the bankruptcy case—would have no case to which it would apply.  Put another way, once the bankruptcy case was dismissed, any appeals related to its reorganization arguably became moot.

The Court agrees with the Appellee that the present appeal is moot, though not necessarily because of the simple fact that the underlying bankruptcy case has been dismissed. Compare In re Walerstein, No. 07 Civ. 2746, 2008 WL 795327, at *2 (E.D.N.Y. March 24, 2008); Northland Assocs. v. United States, IRS (In re Abrantes Constr. Corp .), 160 B.R. 484, 488 (S.D.N.Y. 1993) (holding that the dismissal of the bankruptcy proceeding rendered the issue of the automatic stay provision moot) with In re Ebadi, 448 B.R. 308, 317 (Bankr. E.D.N.Y.

7

2011) ("The fact that the bankruptcy case was dismissed does not render the stay violation moot.").

Instead, this appeal is moot because of two interrelated reasons—first, because NKL did not seek a stay of the foreclosure pending this appeal, and second, because this Court cannot fashion an effective relief.

In certain situations, such as the one at hand, the "failure to obtain a stay pending appeal will render the case moot." In re Sewanee Land, Coal & Cattle, Inc., 735 F.2d 1294, 1295 (7th Cir. 1984). The so-called mootness rule urged by Appellee is a doctrine found in bankruptcy appeals and can be succinctly stated as follows: a debtor's failure to obtain a stay pending appeal renders an appeal moot if assets in which the creditor had an interest are sold in foreclosure. The mootness rule first appeared in former Bankruptcy Rule 805, when a sentence was added to the existing rule mooting an appeal when a debtor failed to obtain a stay pending appeal and the creditor sold to a good faith purchaser. Rule 805, however, did not survive the 1983 changes to the Bankruptcy Rules. Currently, the mootness rule is partially codified at 11 U.S.C. § 363(m), a successor in some respects to Rule 805, but that provision applies only to sales by bankruptcy trustees. It does not apply to other foreclosure sales in bankruptcy proceedings, such as those that may occur when the bankruptcy court lifts the 11 U.S.C. § 362 automatic stay, allowing the creditor to foreclose its lien. Nevertheless, even after the 1983 revisions to the Bankruptcy Rules, there is a judicially-created mootness rule that is not limited to sales by trustees, but has a broader application.

This sort of stay requirement "'is in furtherance of the policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which [innocent] third parties rely.'" In re Abbotts Dairies of Pennsylvania,

8

Inc., 788 F.2d 143, 147 (3d Cir. 1986) (quoting 14 Collier on Bankruptcy ¶ 11–62.03 at 11–62–11 (14th ed. 1976)). "'Finality is important because it minimizes the chance that purchasers will be dragged into endless rounds of litigation to determine who has what rights in the property. Without the degree of finality provided by the stay requirement, purchasers are likely to demand a steep discount for investing in the property.'" In re Pisces Leasing Corp., 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting In re Sax, 796 F.2d 994, 998 (7th Cir. 1986)). Thus, it is in the interest of creditors that a sale of the kind at issue here—one that is made with court approval—can assure a good faith purchaser that the sale is final unless stayed. "[G]enerally the courts have held . . . that failure to obtain a stay moots any appeal if, pending appeal, the sale is made to a good faith purchaser." In Pisces, 66 B.R. at 673.

Accordingly, "[c]ourts have dismissed as moot appeals of orders lifting the automatic stay where the property that was previously subject to the stay has already been sold pursuant to the bankruptcy court's order." In re Watkins, 362 B.R. 568, 572 (E.D.N.Y. 2007); see also Licensing by Paolo v. Sinatra ( In re Gucci), 105 F.3d 837, 840 (2d Cir. 1997) ("[R]egardless of the merit of an appellant's challenge to a sale order, we may neither reverse nor modify the judicially-authorized sale if the entity that purchased or leased the property did so in good faith and if no stay was granted."); In re Baker, 339 B.R. 298, 303 (E.D.N.Y. 2005) ("Courts have uniformly held that if a debtor fails to obtain a stay of a sale of properties, appeal of an order authorizing the sale is rendered moot and must be dismissed once the sale to good faith purchasers has taken place and has been approved."). The fact that the relief from the automatic stay here was granted *nun pro tunc* does not appear to alter this reasoning. Therefore, if the debtor did not attempt to secure a stay, the order authorizing the sale cannot be reversed absent a showing of bad faith by the third-party purchaser.

9

Here, once the Bankruptcy Court granted relief from the automatic stay *nunc pro tunc*, NKL did not seek a stay of that order to preclude the final foreclosure sale pending this appeal. Thus, the property was sold to the Appellee and the deed was executed and recorded pursuant to the Bankruptcy Court's order. Indeed, on November 14, 2012, the Supreme Court, Suffolk County, entered an order confirming the sale of the Cold Spring Harbor Property by the referee to OBM. Because the Appellant did not attempt to obtain a stay pending the appeal, and does not now argue that the purchaser OBM acted in bad faith when purchasing the property, Appellant's appeal of the order granting the Appellee's motion for *nunc pro tunc* relief from the automatic stay is rendered moot. See In re Revere Copper and Brass Inc., 78 B.R. 17, 24 (S.D.N.Y. 1987) ("In the instant appeal, where the Lawrences 'have failed and neglected diligently to pursue the available remedies to obtain a stay' of the Confirmation Order and thereby 'have permitted such a comprehensive change of circumstances to occur,' it is inequitable to hear the merits of their case.") (quoting In re Roberts Farms, Inc., 652 F.2d 793, 798 (9th Cir. 1981).

Finally, even if this Court could conceivably fashion some form of effective relief, this appeal is nonetheless moot. This is because "a bankruptcy appeal is rendered moot under the equitable considerations of bankruptcy 'when even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable.'" In re Burger Boys, Inc., 94 F.3d 755, 760 (2d Cir. 1996) (quoting In re Best Prods. Co., Inc., 68 F.3d 26, 30 (2d Cir. 1995)). As the Appellee points out, the Bankruptcy Court granted the relief from the automatic stay requested by OBM largely on the ground that NKL was tainted with fraud—as the prior owners of the property had been involved with certain criminal proceedings relating to mortgage fraud (see generally Clear Blue Water, LLC v. Oyster Bay Mgmt. Co., LLC, 476 B.R. 60 (E.D.N.Y.

10

2012) (Spatt, J.)—and that its actions had indicated a bankruptcy filed in bad faith. For this additional reason, in the Court's view, it would be inequitable to permit NKL to further benefit by mandating that the entire foreclosure process to be reopened.

In sum, for the reasons stated above, the Appellant's appeal of the order granting the Appelle's motion for *nunc pro tunc* relief from the automatic stay has been rendered moot and, therefore, is denied.

### D.  As to the Bankruptcy Court's Abuse of Discretion

Finally, the Court notes that even if it were to find that the appeal is not moot, the Court would nonetheless deny NKL's appeal, on the ground that the Bankruptcy Court did not abuse its discretion. As set forth above, a district court may only overturn a decision of the bankruptcy court to lift an automatic stay if the district court determines that the bankruptcy court has abused its discretion. See In re Bogdanovich, No. 00 Civ. 2266, 2000 WL 1708163, at *4 (S.D.N.Y. Nov. 14, 2000).

The Second Circuit has indicated that an abuse of the bankruptcy system or evidence of bad faith may be sufficient to warrant an order lifting the automatic stay *nunc pro tunc*. The Appellant argues that the Bankruptcy Court did not utilize specific factors to guide its decision-making process, and that such considerations are required to be made in order for the Bankruptcy Court to act in this regard. Certainly, other circuits undoubtedly require the contemplation of various factors. However, as NKL recognizes, consideration of certain factors—or any factors at all for that matter—has not yet been explicitly mandated by the Second Circuit. Thus, there is no binding precedent that would require the Bankruptcy Court in this case to expressly analyze each and every factor other courts consider.

Furthermore, Judge Eisenberg plainly based her conclusion upon the bad faith bankruptcy filing of NKL. When faced with an analogous factual scenario, other courts in this Circuit have concluded that this finding alone may be sufficient to grant relief from an automatic stay, even without the express consideration of other factors. See, e.g., Corto v. Nat'l Scenery Studios, 112 F.3d 503, at *1 (2d Cir. 1997) (noting that the bankruptcy court had issued an order lifting, *nunc pro tunc*, an automatic stay, on the basis that there was a continual abuse of the bankruptcy system and its stay provisions, and affirming this order); In re Plagakis, No. 03 Civ. 0728, 2004 WL 203090, at *5 (E.D.N.Y. Jan. 27, 2004) (quoting the bankruptcy court's observation that the debtor had "filed a skeletal petition minutes before a foreclosure sale" with the plain intent to prevent foreclosure "without the ability or the intention to reorganize", and thus finding that the "the Bankruptcy Court correctly found that Debtor's bad faith in filing for Chapter 13 relief justified dismissing his petition *nunc pro tunc* in order to validate the mortgage foreclosure sale.").

The fact that a debtor has acted in bad faith is plainly listed in the factors that many courts take into consideration, usually referred to as the "Stockwell factors". See, e.g., In re WorldCom, Inc., 325 B.R. at 521–22 ("The relevant factors are: (1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay, (2) if the debtor has acted in bad faith, (3) if there was equity in the property of the estate, (4) if the property was necessary for an effective reorganization, (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation, (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor, and (7) if the creditor has detrimentally changed its position on the basis of the action taken."). However,

there is no rule in this Circuit that requires a bankruptcy court to exhaustively consider every factor.

The Second Circuit has clearly stated that the "'facts of each request [to be granted a relief from the stay] will determine whether relief is appropriate under the circumstances.'" In re Mazzeo, 167 F.3d 139, 142 (2d Cir. 1999) (quoting In re Sonnax Indus., Inc., 907 F.2d 1285, 1286). Contrary to the Appellant's contentions, the Second Circuit has never found that "some framework must be used in granting retroactive stay relief." (Appellant's Mem. at 6.) Rather, in In re Mazzeo ("Mazzeo"), 167 F.3d 139 (2d Cir. 1999), it merely observed that it had listed a number of factors ("Sonnax factors") that *may* be relevant in deciding whether the stay should be lifted, in order to *permit litigation to continue in another forum*. However, litigation in another forum is not relevant whatsoever to the case at hand, and consequently neither are the "Sonnax factors". Further, while the Second Circuit in Mazzeo did remand to the bankruptcy court for further findings because "the bankruptcy court did not mention Sonnax, or any doctrinal framework," it did so mainly because it was unclear whether that court considered any of the Sonnax factors" and because the factual findings were sparse. Id. at 143. Here, Judge Eisenberg made clear factual findings on the record to ensure to this Court that she did not abuse her discretion. More importantly, it was clear from the transcripts of those proceedings that Judge Eisenberg plainly based her conclusion on a finding of bad faith, a factor that is highly pertinent in this context. The fact that NKL appeared without counsel at the first hearing falls squarely on the principals of that company and does not warrant a different result.

Finally, the Court notes that while there was no written decision by Judge Eisenberg, she made many findings during the two hearings on this issue. "The findings of fact and conclusions of law need not be written but may instead be stated orally and recorded in open court." In re

13

Mazzeo, 167 F.3d 139, 142 (2d Cir. 1999).  Further, they need not include "'punctilious detail [ ] or slavish tracing of the claims issue by issue and witness by witness.'" Krieger v. Gold Bond Building Prods., 863 F.2d 1091, 1097 (2d Cir. 1988) (quoting Ratliff v. Governor's Highway Safety Program, 791 F.2d 394, 400 (5th Cir. 1986)).

Therefore, even if this appeal were not moot, the Court finds that the Bankruptcy Court's August 28, 2012 order did not evince an abuse of discretion.  Accordingly, the appeal is also dismissed on this ground.

### III.  CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Appellant's motion to appeal the August 28, 2012 order from the Bankruptcy Court annulling the automatic stay *nunc pro tunc* is denied; and it is further

**ORDERED**, that the Clerk of the Court is directed to mark this case as closed.


**SO ORDERED.**
Dated: Central Islip, New York
April 25, 2013

                    _/s/ Arthur D. Spatt_
                   ARTHUR D. SPATT
                  United States District Judge